**James Ralph BURNS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–69.**

Court of Criminal Appeals of Oklahoma.

March 23, 1976.

Joseph McKimmey and Irvin Owen, Shawnee, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Harold T. Garvin, Jr., Legal Intern, for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, James Ralph Burns, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Pottawatomie County, Case No. CRF–75–24, for the offense of Unlawful Delivery of Marihuana, After Former Conviction of a Felony, in violation of 63 O.S.1971, § 2–402, ¶ B 2. His punishment was fixed at a term of fifteen (15) years' imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At approximately 9:00 p.m. on the evening of November 8, 1974, the defendant was alleged to have sold a baggie of Marihuana to Dennis Dill, who was employed by the Pottawatomie County District Attorney's Office as an investigator to work narcotics. Agent Dill testified that at approximately 2:00 p. m. on the afternoon in question he was in the company of two females, one named Gaylinn Muzny and her friend Carol, in a parking lot just north of Hardee's'. Ms. Muzny introduced agent Dill to the defendant and one Dana Austin, who was in the company of defendant. Dill had a conversation with the defendant and Austin about purchasing some marihuana, and they told him that they had some but they were going to get some angel dust to put on it so he should come around to their apartment at approximately 5:00 p. m. that evening. After this conversation, Ms. Muzny took the agent back to his car and Dill made a call to investigator Dan McGehee. Then, at approximately 4:45 p. m., he met investigator McGehee and Detective Gary Rogers at a prearranged location, where they taped a transmitter to his left leg and gave him the money with which to purchase the marihuana. Dill then left and went to defendant's and Austin's apartment on Market Street. Investigator McGehee and Detective Rogers followed in their car, parking south of Highland Street on Market Street, in a position where they could observe defendant's apartment and also hear what was being transmitted over the transmitter taped to Dill's leg. Upon arriving at the apartment, Dill found a note on the door stating defendant and Austin would be

back at approximately 5:30 or 5:45 p. m. Dill returned to his car and waited for them to arrive. They arrived at approximately 5:30 p. m. and told Dill that they did not have the angel dust and that he should come back around 7:30. Dill left and returned at 7:30 p. m. with two white males named Buddy McInturff and Darrell Caudell. Upon arriving he observed investigator McGehee and Detective Rogers in their car south of Highland on Market Street.

Dill, McInturff and Caudell proceeded to David Graves' apartment which was upstairs next to the apartment occupied by defendant and Austin. While they were there defendant and Austin came in. Dill asked them if they had the marihuana with the angel dust yet, but they said no and told Dill to come back around 9:00 p. m. Dill, McInturff and Caudell returned about 9:00, and Dill noted that investigator McGehee and Detective Rogers were parked in the same place. They proceeded to the defendant's apartment and upon arriving defendant told them that the marihuana was ready. Dill testified that the defendant reached inside a cabinet and retrieved a large brown paper sack and threw it on top of the cabinet; Austin reached inside the sack and took a bag out and handed it to Dill. The defendant then took one ten dollar bill. At this point in the trial, Dill identified State's Exhibit No. 1 as the baggie which he had purchased from defendant. Dill then stated that he, McInturff and Caudell left the apartment and drove around. He further stated that he simulated smoking some of the marihuana, which was purchased that evening, with McInturff and Caudell. He let them off later and at approximately 1:00 a. m. the next morning he met with investigator McGehee and Detective Rogers and turned the evidence over to McGehee.

On cross-examination Dill testified that he had used marihuana, LSD and speed a number of times prior to becoming an undercover agent, but that he no longer used any type of drug or narcotics since

becoming an agent. Further, he admitted to simulating smoking marihuana twice on the day in question, once with McInturff and Caudell after purchasing the marihuana from the defendant and earlier when he was with McInturff and Caudell in the apartment of David Graves at approximately 7:30 that evening. Finally, he stated that Gaylinn Muzny came to the apartment, he thought, approximately one minute after he had purchased the marihuana from the defendant. Agent Dill identified the defendant as the man from whom he had purchased the marihuana on the evening in question.

Investigator McGehee and Detective Rogers corroborated agent Dill's testimony in that they substantiated the times and procedures involved when they met with Dill, and that they did have defendant's apartment under surveillance, and that they did observe someone with the physical characteristics of the defendant at the apartment on the evening in question. They both remembered that the defendant was extremely tall and of slender build, however, they could not testify from their own knowledge that the defendant actually sold the marihuana to agent Dill as their knowledge of this transaction came from what agent Dill had told them. This concluded the State's case in chief.

The defendant presented two witnesses in his behalf. They were Debbie Heckman, defendant's cousin, and Claud William Heckman, Debbie Heckman's husband. They both testified that they lived at 1409 S.W. 30th in Oklahoma City and that they were acquainted with the defendant. They both stated that sometime around the 1st of November the defendant moved into their house and stayed with them because he was having some sort of marital difficulty. They both remembered that on the date in question November 8, 1974, defendant was at their home at approximately 5:30 that evening and did not leave until around 9:00 p. m. They could both remember this because Mr. Heckman and the defendant were planning to go treasure

hunting the following day, Saturday the 9th, and they were discussing their plans with the probability of renting a metal detector. Further, defendant's exhibit D was introduced showing that there was in fact a metal detector rented by Claud Heckman on the 9th day of November, 1974. Finally, they stated that it took a little over an hour to drive from their house to Shawnee. At this point in the trial, the defense rested its case.

At this point the State called Gaylinn Muzny as a rebuttal witness. She testified that she did know the defendant and also Dennis Dill. She could not recall when she had introduced Dill to the defendant, but she did know it was approximately two to three weeks after October 17, and that it was on a Friday afternoon. She stated she saw the defendant later that day sometime between 7:00 p. m. and 9:00 p. m. at his apartment.

On cross-examination she related that she had never seen Dill buy any marihuana from the defendant. This concluded the testimony in the first stage of the proceedings.

In the second stage of this bifurcated proceeding, the State introduced two judgments and sentences, one wherein the defendant pled guilty to grand larceny, and the other wherein he pled guilty to burglary in the second degree.

The defendant then took the stand and admitted the two prior convictions and explained the circumstances surrounding them. Further, defendant called Rev. Ronnie Fritch and Billy M. Phillips, Sheriff of Pottawatomie County. Both testified that they knew the defendant and that they did not know him to be a person of violent nature or anti-social tendencies. This concluded the evidence presented at the second stage.

The defendant's sole assignment of error alleges that the 15 year sentence is excessive and needlessly punitive under the facts. We need only observe that the punishment was within the range provided by law and does not shock the conscience of this Court. See, *Turner v. State,* Okl. Cr., 479 P.2d 631 (1971).

Finding no merit to the assignment of error presented, the judgment and sentence appealed from is, accordingly, *AFFIRMED.*

BUSSEY and BLISS, JJ., concur.